In re SCHMIDT.

(Circuit Court of Appeals, Second Circuit. June 14, 1910.)

No. 290.

1. Chattel Mortgages (§ 86*)—Filing—Time.

Under Lien Law N. Y. 1897, c. 418, § 90, declaring that every chattel mortgage, not accompanied by immediate delivery of the goods mortgaged and followed by an actual and continued change of possession, is void as against creditors of the mortgagor, unless the mortgage, or a true copy thereof, is filed as required, such mortgages must be filed within a reasonable time; and hence a chattel mortgage not filed until nearly three months after its execution was invalid.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 161; Dec. Dig. § 86.*]

2. Chattel Mortgages (§ 197*)—Failure to File—Invalidity—"Creditors."

Under Lien Law N. Y. 1897, c. 418, § 90, providing that an unfiled chattel mortgage is absolutely void as against the creditors of the mortgagor, the word "creditors" included all creditors, and not those only who were prejudiced by the mortgagee's failure to file.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 430; Dec. Dig. § 197.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

3. Bankruptcy (§ 184*)—Mortgages—Validity—Objections by Receiver.

A receiver in bankruptcy may assail a chattel mortgage void as to creditors for failure to file within a reasonable time, as required by the state law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. § 184.*]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Max Schmidt, bankrupt. From an order directing John W. McDonald, trustee, to pay a chattel mortgage debt due from the bankrupt to Augusta Mauersburger, he appeals. Reversed.

F. M. Czaki, for appellant.

B. H. Arnold, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. April 21, 1908, the bankrupt for the full present consideration of $2,000 executed and delivered a chattel mortgage on the furniture and fixtures of a restaurant carried on by him to Augusta Mauersburger. The mortgagee is unable to speak the English language and apparently entirely unacquainted with business. The mortgage was not filed in the office of the register for the city

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and county of New York until July 8, 1908, through the omission of her attorney either to do so or to tell her to do so. October 16, 1908, the petition in bankruptcy was filed and a receiver appointed. December 31, 1908, the receiver sold the chattels covered by the mortgage, and the mortgagee moved for an order requiring him to pay the amount of the mortgage out of the proceeds of sale. February 16, 1909, this motion was referred to the referee as special master to take testimony and report. The above material and a good many immaterial facts having been established, the following colloquy took place:

"The Master: At this point I shall interpose, and will state that, assuming the facts as stated, or offered to be proved, the most favorable to the trustee, I have reached a conclusion, and will make my report accordingly. I now request Mr. Fried to state his offers of proof for the record.

"Mr. Fried: I offer to prove that on July 8, 1908, at the time of the assignment by Max Schmidt to a committee of creditors, represented by Exhibit A, of May 17th, that the said Schmidt was insolvent, and that the claimant knew he was insolvent. I also offer to prove that Mrs. Mauersburger knew what authority she was giving to Louis L. Kahn, her attorney, on the 10th of August, 1908, and that thereafter, and on or about the 4th day of September, 1908, the mortgage was delivered to Louis L. Kahn for $600 on the Long Island property, executed by Max Schmidt, according to the terms of the letter of August 10, 1908, and that on or about that date the said creditors' agreement—Exhibit C—was signed by the said Louis L. Kahn."

The mortgage of $600 on real estate on Long Island referred to was in no way connected with the chattel mortgage under consideration. May 20, 1909, the special master reported that the mortgage should be paid in full, with interest from April 21 to December 31, 1908, which report was confirmed by the court November 21, 1909, and the trustee has taken this appeal.

All parties have argued the case as if the only creditors as to whom the mortgage would be void under the law of the state of New York are those persons who became creditors between April 21, 1908, the day of its date, and July 8, 1909, the day it was filed. The lien law of New York (Laws 1897, c. 418) provides:

"Sec. 90. Every mortgage or conveyance intended to operate as a mortgage of goods and chattels or of any canal boat, steam tug, scow or other craft, or the appurtenances thereto, navigating the canals of the state, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, is filed as directed in this article."

Section 92 provides that in the city of New York the mortgage must be filed in the register's office. As the lien law does not state the time within which the mortgage must be filed, the first question is whether that may be done at any time. The Court of Appeals has held that the filing must take place within a reasonable time after the execution of the mortgage. In Karst v. Gane, 136 N. Y. 316, at page 324, 32 N. E. 1073, at page 1075, Chief Judge Andrews says:

"It remains to be considered whether the failure to file the mortgage to the defendants for six weeks after its execution lets in the lien of the executions on the judgments in favor of the plaintiff, obtained after the filing of the mortgage, and gives them a preference over the mortgage. The second sec-

tion of the act of 1833 prescribes how and where chattel mortgages shall be filed, but it does not in terms prescribe the time within which this is to be done. The purpose of the filing is indicated by the last clause of the section, which directs that the mortgages, when filed in the proper offices, shall 'be kept there for the inspection of all persons interested.' While the act does not in terms require an immediate filing of a mortgage in order to make it valid against creditors or subsequent mortgagees or purchasers, the purpose of the act can only be satisfied by prompt and diligent action on the part of the mortgagee in filing his mortgage. The filing stands as a substitute for immediate delivery and an actual and continued change of possession of the property, and avoids the conclusive presumption of fraud which would otherwise attach to the instrument under the act of 1833 in the absence of delivery and a change of possession of the mortgaged property. Some time will necessarily elapse between the execution and filing of the mortgage. Where it appears that due diligence was exercised in filing the mortgage, and there was no unnecessary delay, and no actual intervening lien has been acquired, there would seem to be no ground upon which subsequent lien holders could question the validity of the mortgage under the statute of 1833. The filing under these circumstances would be immediate, and make the mortgage valid as against liens subsequently acquired. But a delay of six weeks in filing the mortgage is not a compliance with the act. There were no circumstances rendering so long a delay necessary. There can be no doubt that if, during the delay in filing, a lien had been acquired by a creditor, the mortgage as to such lien would be void. The mortgage was, however, filed before the plaintiff's judgments and executions were obtained. This did not restore the validity of the mortgage as against creditors whose debts were in existence during the default in filing the mortgage, although judgments or executions were not obtained until after the mortgage was in fact filed."

And in the case of Tooker v. Siegel-Cooper Co., 194 N. Y. 442, 87 N. E. 773, a delay in filing of one month was held to invalidate the mortgage as to creditors.

The next question is whether the act means all creditors, or only those who could be held not to have been prejudiced by the failure to file. Judge Andrews, in the Karst Case, considered this question also, saying at page 319 of 136 N. Y., and page 1073 of 32 N. E.:

"It is to be observed that the limited meaning of the word 'creditors' in the act of 1833, insisted upon in behalf of the defendant, has no support in the literal reading of the act. The first section declares that a mortgage of chattels, which shall not be accompanied by an immediate delivery and an actual and continued change of possession of the things mortgaged, 'shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed as directed in the succeeding section of the act.' There is nothing in the language of the section confining the meaning of the word 'creditors,' or restricting its natural sense, or which indicates an intention to distinguish between a creditor who became such before, and one who became a creditor after, the execution of the mortgage. The section speaks of 'subsequent purchasers and mortgagees.' There was a very good reason for this, since a prior purchaser or mortgagee would stand on his paramount right, or would need no protection, or would have the means of protection against a subsequent mortgage. The use of the word 'subsequent' as applied to purchasers or mortgagees may not be of great importance in ascertaining the meaning of the word 'creditors,' but it indicates that the Legislature had in mind, and expressed in respect to one class of persons, to be protected by the statute, the time when their rights accrued with reference to the execution of the mortgage."

And at page 321 of 136 N. Y., and page 1074 of 32 N. E.:

"It was the plain purpose of the act of 1833, disclosed on its face, to require publicity to be given to chattel mortgages for the protection of the claims of persons mentioned therein. It is undoubtedly true that one, and

perhaps the most important, purpose of the act, so far as it applies to creditors, was to protect persons giving credit to the mortgagor in ignorance of the existence of a mortgage upon his property. But the legislative policy was broader than this single purpose. It is impossible to say that only creditors who became such during the existence of a mortgage may be injured by keeping the mortgage secret. It certainly is not improbable that in many cases antecedent creditors may be lulled into security, and forbear the collection of their debts at maturity, by the apparent unincumbered possession and ownership by the debtor of property covered by an undisclosed mortgage. The statute prescribes a general rule which must be observed in order to entitle a mortgagee to assert his lien as against creditors, and, although a creditor may have notice of an unfiled mortgage at the time the credit is given, yet it is held that, as to a creditor with notice, such a mortgage will be postponed to the lien of judgment and execution in his favor upon the debt so contracted. This was held in Sayre v. Hewes, 32 N. J. Eq. 652, by the New Jersey court under a statute similar to that in this state. The same rule has been declared in our courts. Farmers' Loan & Trust Co. v. Hendrickson, 25 Barb. (N. Y.) 484; Stevens v. Buffalo & N. Y. R. R. Co., 31 Barb. (N. Y.) 590. In these cases the act was extended to cases not within the policy which it is claimed is the sole reason for the legislation in question."

If the act had provided that the mortgage must be filed within 30 days, a failure to do so would obviously make it invalid against all creditors. See our opinion handed down with this in the Case of the Watts-Woodward Press, 181 Fed. 71, as to the effect of not refiling within the period fixed by the statute.

The receiver in bankruptcy had a right to assail this mortgage, Skilton v. Coddington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, and our own decision in Re Gerstman, 157 Fed. 549, 85 C. C. A. 211. We are reluctantly compelled to the conclusion that the order of the court below was erroneous. The mortgage should have been held invalid against all the creditors of the bankrupt because of failure to file it for nearly three months after its execution.

Order reversed.