## CENTRAL STATE BANK v. McFARLIN.

### In re B. A. LOCKWOOD GRAIN CO.

#### (Circuit Court of Appeals, Eighth Circuit. March 7, 1919.)

#### No. 5051.

1. WAREHOUSEMEN ⌬⇒15(2)—TRANSFER OF WAREHOUSE RECEIPTS—RIGHTS OF INDORSEE.
   The indorsement of warehouse certificates for grain to a bank as security transfers to the bank the legal title to the grain represented thereby.

2. WAREHOUSEMEN ⌬⇒20—CONDUCT OF BUSINESS—MIXING OF GRAIN.
   Under Code Supp. Iowa 1913, §§ 3138a23, 3138a24, a warehouseman may mingle grain or products covered by outstanding warehouse receipts with other grain or products of like grade, whether owned by the warehouseman or other parties, and it will not constitute conversion or confusion of goods.

3. WAREHOUSEMEN ⌬⇒25(7)—ISSUANCE OF WAREHOUSE RECEIPTS—CONVERSION.
   The grinding of wheat covered by warehouse receipts held by a bank by the warehouseman, which also operated a mill, without replacing it with other wheat, did not constitute conversion, so long as the products were kept on hand; but their sale, leaving insufficient wheat and products to satisfy the certificates, constituted conversion to the extent of the deficiency.

4. BANKRUPTCY ⌬⇒340—ADVERSE CLAIM TO PROPERTY—WRONGFUL SALE BY BANKRUPT—TRACING PROCEEDS.
   Assuming it to be permissible for a claimant to trace personal property wrongfully sold by a person subsequently becoming a bankrupt into accounts receivable belonging to the bankrupt, such tracing must be specific and the identification clear. The burden of proof is on claimant, and a mere showing that the general assets of bankrupt, including accounts receivable, have been increased by the wrongful sale, is not sufficient.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

In the matter of the B. A. Lockwood Grain Company, bankrupt; M. McFarlin, trustee. The Central State Bank appeals from an order denying priority to its claim. Affirmed.

Frank T. Jensen, of Des Moines, Iowa (Charles S. Bradshaw, of Des Moines, Iowa, on the brief), for appellant.

Charles Hutchinson, of Des Moines, Iowa (Oscar Strauss and Clark, Byers & Hutchinson, all of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

BOOTH, District Judge. This is an appeal from a judgment which denied the bank's petition to have the unpaid balance of its claim against the bankrupt allowed as a preferential claim, to be paid out of the proceeds of certain accounts receivable belonging to the bankrupt and collected by the trustee. The following facts appear:

The Shannon & Mott Company was an Iowa corporation, dealing in grain and products, owning and operating a mill and elevator at Des

⌬⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Moines, Iowa. The B. A. Lockwood Grain Company was also an Iowa corporation, owning and operating elevators and dealing in grain and other products at Des Moines, Iowa. In 1911 the Lockwood Company bought all of the assets of the Shannon & Mott Company, but continued to carry on the milling business in the name of the Shannon & Mott Company. This ownership was, however, not known to the bank. Between January 26 and April 21, 1914, the Shannon & Mott Company issued to the Lockwood Company certain negotiable warehouse certificates, and the Lockwood Company thereafter indorsed to the bank these certificates as collateral security to certain promissory notes, made by the Lockwood Company to the bank, and bearing even dates with the indorsements of the certificates respectively. The form of the warehouse certificate is as follows:

··"Shannon & Mott Company, Des Moines, Iowa.

"Grain Storage Certificate No. 6.

"This certificate is to certify that the Shannon & Mott Co., a corporation whose address is the city of Des Moines, Iowa, having complied with chapter 10, title 15, of the Code of Iowa of 1897, by executing the declaration required in such cases by said statutes and causing the same to be filed in the office of the recorder of deeds and duly recorded, as shown on the back of this certificate, which is made a part hereof, for value received, in hand paid by B. A. Lockwood Grain Co., of the city of Des Moines, Iowa, do hereby sell and convey, assign and transfer, unto the said B. A. Lockwood Grain Co. thirty-five hundred bushels of wheat and products stored in the buildings and structures hereinafter described at the several places hereinafter named, as follows:

"In said Shannon & Mott Co.'s iron-covered cribbing and frame elevator building, and frame iron-covered warehouse situated on their property at 15th and Mulberry streets, Des Moines, Iowa, and attached to and adjoining their mill building proper, to be delivered to the said B. A. Lockwood Grain Co., or their order, upon presentation and surrender of this certificate.

"Signed and executed at its office in the city of Des Moines, Iowa, in pursuance with the provisions of the above named statute.

"Dated this 26th day of January, 1914.

"[Signed]   Shannon & Mott Company,
"By W. A. Applegate, Sec."

Six warehouse certificates, of similar form and purporting to cover 19,000 bushels of wheat and products, were indorsed by the Lockwood Company to the bank between June 5 and August 15 as collateral to notes amounting to $15,000. Other similar certificates, covering corn, are not here involved. The Lockwood Company was adjudicated a bankrupt August 24, 1914. None of the notes had been paid. From January 26, 1914, the Shannon & Mott Company had continued to receive into its elevators and warehouses large quantities of grain, to manufacture the same into products, and to sell the same.

Subsequent to April 21, 1914, there was never as much as 19,000 bushels of wheat on hand at any one time. At the time of the bankruptcy there was a certain quantity of wheat and products on hand. By stipulation between the bank and the receiver, this wheat and the products were sold, and the proceeds, amounting to something over $11,000, turned over to the bank, and applied upon its claim, without prejudice to the rights of either party. The balance of the bank's claim is approximately $6,800.

Among the assets of the bankrupt were certain accounts receivable, arising from mill products sold. The trustee collected approximately $8,700 of these accounts, and the bank petitioned that the balance of its claim be paid out of these proceeds, in preference to the claims of other creditors. The court below denied the bank's petition, but held the claim should be allowed as a general claim. It is admitted that 19,000 bushels of wheat, if on hand at the time of the bankruptcy, would have been more than sufficient to pay the bank's claim.

The issue is stated by the appellant bank as follows:

"The correctness of the claim against the estate is not disputed, and the issue is whether or not there has been a proper tracing of trust funds."

The appellee takes the same position.

The acquiring by the bank of the warehouse certificates involved several distinct transactions. These several transactions began, so far as the bank was concerned, on the dates when the warehouse certificates were indorsed by the Lockwood Company to the bank. The issuance of warehouse receipts by Shannon & Mott Company to the Lockwood Company was a mere bookkeeping transaction, inasmuch as the Lockwood Company owned all of the assets of the Shannon & Mott Company, and was in reality running the business of that company. The Lockwood Company, therefore, stands in the transactions with the bank as the warehouseman dealing directly with the bank.

[1] The indorsement of the warehouse certificates to the bank transferred the legal title to the wheat and products which they represented. The warehouse certificates so read, the statutes of Iowa so provide, and such is the general law in the absence of statute. Section 3138a41, 1913 Supp. to Code of Iowa; Gibson v. Stevens, 8 How. 383, 12 L. Ed. 1123; Dale v. Pattison, 234 U. S. 399, 34 Sup. Ct. 785, 58 L. Ed. 1370, 52 L. R. A. (N. S.) 754. This title thus vested in the bank, though liable to be divested by the payment of the notes, was nevertheless a legal title, and not a lien. The certificates cover wheat and products. Appellant bank claims that this was legal under the Iowa statutes, and we shall assume, without deciding, that this is so. No specific proportion between wheat and products is mentioned.

[2] Under the statute of Iowa the warehouseman had the right to mingle the wheat and products thus belonging to the bank with other wheat and products of like grade, whether belonging to the warehouseman or to third parties. This did not constitute conversion, nor confusion of goods. Sections 3138a23, 3138a24, 1913 Supp. to Code of Iowa; Sexton v. Graham, 53 Iowa, 181, 4 N. W. 1090.

[3] The bank knew that the Shannon & Mott Company was constantly grinding the wheat into products. We conclude, therefore, that the mere grinding of the bank's wheat, without replacing it with other wheat, but still keeping the products on hand, would not have been a conversion.

But the grinding of wheat into products and selling of those products down to a point where there was not sufficient wheat plus products left on hand to satisfy the bank's certificates constituted conversion to the extent of the deficiency. Such conversion would give rise to an action for damages. A further result might also follow. The

products so sold being made up in whole or in part of wheat belonging to the bank, there might arise, in the absence of countervailing circumstances, a constructive trust attaching to the accounts payable by the purchaser.

[4] Bearing in mind the foregoing, let us examine the several transactions between the Lockwood Company and the bank. On June 5, 1914, the Lockwood Company transferred to the bank warehouse certificate No. 7, for 3,500 bushels of wheat and products. As the tables of figures in evidence show that it was not impossible that this amount of wheat and products was on hand at the time, and as there is a presumption that the Lockwood Company, carrying on the business and being in fact the warehouseman, would not negotiate the certificate, unless that amount of wheat and products was on hand, it may be taken for granted that the certificate represented existing wheat and products. On July 1, however, there was on hand but 1,900 bushels of wheat, so that at least 1,600 bushels of certificate No. 7 must be traced into products which were on hand June 5, 1914, or manufactured subsequent thereto, or into the accounts resulting therefrom. The bank cannot claim ownership in 1,600 bushels of wheat subsequently put in, merely because this amount of wheat had possibly been on hand June 5, and had been ground into products. The certificate covered wheat and products indifferently. The 1,900 bushels of wheat remaining on hand July 1, 1914, can permissibly be traced into the 3,332 bushels on hand August 24, 1914.

By this analysis and similar analyses of the other several transactions relating to the remaining warehouse certificates, it appears that the only accounts which can be properly looked to, so far as certificate No. 7 is concerned, as possibly originating from the bank's products, are those accounts originating subsequent to June 5, 1914; as to certificate No. 10, subsequent to July 14, 1914; as to certificate No. 11, subsequent to July 21, 1914; as to certificate No. 6, subsequent to July 25, 1914; as to certificate No. 8, subsequent to August 10, 1914; and as to certificate No. 9, subsequent to August 15, 1914—these being the respective transfer dates. Furthermore, in each instance the account must be shown to have originated from a sale of products, which left less wheat and products on hand than were called for by the outstanding certificates.

There has been no such identification of the accounts going to make up the $8,700 now in the hands of the trustee. The utmost that appellant bank can claim is that these accounts originated subsequent to April 21, 1914; and this is attempted to be deduced from the wording of an ambiguous stipulation, and not from direct evidence bearing upon the matter. It is claimed by the appellee that the record shows that the accounts represented by the $8,700 are identified merely as originating subsequent to January 26, 1914. There is no presumption that the $8,700 represents only accounts which originated during the periods heretofore specified, and in amounts so specified as to the particular periods, nor that any of said accounts originated at any particular time. The burden of proof rests upon the bank. Schuyler v. Littlefield, 232 U. S. 707, 34 Sup. Ct. 466, 58 L. Ed. 806. And the proof must be

clear. Empire State Surety Co. v. Carroll Co., 194 Fed. 593, 114 C. C. A. 435; State Bank v. Alva Bank, 232 Fed. 847, 147 C. C. A. 41; Zenor v. McFarlin, 238 Fed. 721, 151 C. C. A. 571.

Furthermore, the presumption which the parties seem to have conceded attached to the wheat and products on hand August 24, that they were either the identical wheat and products covered by the bank's certificates, or wheat and products which had been set aside by the bankrupt to replace wheat and products which had unquestionably belonged to the bank, cannot, in our judgment, apply to the accounts receivable. Such presumption as to the wheat and products on hand August 24 rests upon a supposed intention on the part of the bankrupt to replace and keep intact trust property, even after it had been once wrongfully used, coupled with the fact that such substituted property of the same kind is found remaining in the bankrupt's possession. But these accounts receivable were not fungibles. Each account had a definite origin, at a definite date, and was for definite products sold, and had behind it a definite individual credit. The bankrupt could not legally substitute in place of an account to which a constructive trust had attached another account; therefore no such intention on its part will be presumed.

The theory of the bank seems to be that during the period after April 21, 1914, the bank owned all the wheat on hand and which afterwards came in, all the products made from said wheat, all the accounts originating from sales of said products, or that its ownership first attached to 19,000 bushels of wheat; next, attached to the products and resulting accounts derived from said wheat; next, on the coming in of more wheat, the ownership shifted from the accounts and the products, and attached itself again to the new wheat; and so on, as wheat was transferred into products and acccounts, and other new wheat brought in.

Both forms of this theory are dependent upon the doctrine that a claimant whose property has helped to swell the general assets of a party subsequently becoming bankrupt, has a prior right in those general assets without specific identification or tracing of the claimant's property. That doctrine has been expressly repudiated by this court. Empire State Surety Co. v. Carroll Co., 194 Fed. 593, 114 C. C. A. 435; Macy v. Roedenbeck, 227 Fed. 346, 142 C. C. A. 42, L. R. A. 1916C, 12; State Bank v. Alva Bank, 232 Fed. 847, 147 C. C. A. 41; Zenor v. McFarlin, 238 Fed. 721, 151 C. C. A. 571.

The conclusion reached by the trial court was right, and the judgment is affirmed.