WESTINGHOUSE ELECTRIC & MFG. CO. v. BROOKLYN RAPID TRANSIT CO. et al.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 98.

1. CORPORATIONS ⬦478—AFTER-ACQUIRED PROPERTY CLAUSE IN CORPORATION MORTGAGE HELD LIMITED TO THAT SPECIFIED.

In a chattel mortgage or agreement of pledge executed by a corporation to secure bonds, issued primarily for the purpose of acquiring the stock and property of another corporation, by which it conveyed to the trustee all of its property and franchises, "whether now owned or hereafter acquired, including particularly the property hereinafter described, and does hereby pledge and hypothecate the same; that is to say," followed by enumeration of four classes of property which it expected to acquire through the purchase, the after-acquired property clause *held* limited to property so acquired, and not to extend to property otherwise acquired years afterward.

2. LIENS ⬦7—INTENTION TO ESTABLISH EQUITABLE LIEN MUST BE CLEAR.

The courts have been strict in demanding as a condition to the establishing and enforcement of an equitable lien that the intention of the parties should be clearly found expressed in the contract, without vagueness or uncertainty.

3. CHATTEL MORTGAGES ⬦188 (1)—OF AFTER-ACQUIRED PROPERTY NOT ENFORCEABLE AS AGAINST RECEIVER.

A mortgage or contract of pledge of subsequently acquired personal property, not perfected by delivery of possession, will not be enforced as against creditors, or a receiver representing general creditors.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. CHATTEL MORTGAGES** ⊜⇒196—**NOT REFILED INVALID AGAINST GENERAL CREDITORS.**

A chattel mortgage, not refiled annually, as required by a state statute, to keep it in force, is invalid as against general creditors of mortgagor.

**5. PLEDGES** ⊜⇒12—**POSSESSION ESSENTIAL TO VALID PLEDGE OF SECURITIES.**

Delivery and possession are essential to a valid pledge of negotiable paper, and an assignment in pledge of nonnegotiable paper, to create a property right as against third persons, requires possession by the pledgee.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Brooklyn Rapid Transit Company and others. From an order denying an application of the Equitable Trust Company of New York, as trustee under a first refunding gold mortgage, for the payment of $650,000 received by Lindley M. Garrison, as receiver, in payment of certain bonds of the Sea Beach Railway Company, the trustee appeals. Order affirmed.

Murray, Prentice & Howland, of New York City (Charles A. Collin and Charles P. Howland, both of New York City, of counsel), for appellant.

Collin, Wells & Hughes, of New York City, for committee of holders of bonds secured by first mortgage of the Brooklyn Rapid Transit Co.

Larkin & Perry, of New York City (H. V. Poor, John M. Perry, and Francis M. Scott, all of New York City, of counsel), for Central Union Trust Co. of New York, as trustee, etc.

Carl M. Owen, of New York City (Carl M. Owen, Lindley M. Garrison, and Harold J. Gallagher, all of New York City, of counsel), for receiver.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The Brooklyn Rapid Transit Company is a New York corporation, and was organized on January 18, 1896, for the purpose of furnishing power and equipment to railroads and other works, or assisting any corporation so to do, and with power to purchase, acquire, hold, and dispose of stocks, bonds, and other obligations of other corporations. Its corporate activity was that of a holding company since its incorporation until its later merger with the Transit Development Company on August 1, 1918. This merger resulted in certain real estate owned by the Transit Development Company, and which was subject to a lien of a first refunding gold mortgage, coming into its possession. By virtue of the pledge under said mortgage, certain obligations secured by the mortgage of the Transit Development Company were vested in the Brooklyn Rapid Transit Company, subject, however, to the first refunding gold mortgage trust. While the Brooklyn Rapid Transit Company existed alone in its financing, it purchased and acquired from time to time securities of other corporations; it also issued its corporate obligations in the form of bonds secured by the mortgages or deeds of trust.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On October 1, 1895, it made, contemporaneously with its incorporation, the mortgage or deed of trust herein considered, and named the Central Trust Company of New York its trustee. Since the Equitable Trust Company of New York has succeeded as such trustee. This mortgage secured $7,000,000, face value, 50-year 5 per cent. gold bonds, of which $6,970,000 are outstanding in the hands of the public, and the balance are pledged for various securities. There are pledged as security for these bonds, and deposited with the trustee under this mortgage, securities, the major portion of which were acquired by the Brooklyn Rapid Transit Company by purchase under the foreclosure sale of the assets and properties of the Long Island Traction Company. This mortgage makes no mention of real estate. The nature of its granting clause indicates a collateral trust of the securities actually pledged and deposited thereunder.

On July 1, 1902, the Brooklyn Rapid Transit Company gave its first refunding gold mortgage, which secured and then authorized $150,-000,000 100-year 4 per cent. gold bonds, of which $27,623,000, face value, of the bonds, have been authenticated and delivered; $3,439,000 of these bonds are outstanding in the hands of the public; $10,000,000 are pledged as security under the agreements securing the 6-year and 3-year notes of the Brooklyn Rapid Transit Company; $7,079,000 are pledged as security for bank loans antedating the receivership herein referred to; $5,092,000 are held by the receivers of the Brooklyn Rapid Transit Company; $250,000 are pledged with the Brooklyn City Guaranty Fund; and $1,761,000 are owned by the Nassau Electric Railroad Company, which have been pledged by said company. Many thousands of dollars of par value of stocks, bonds, and certificates of indebtedness of various street railways and other companies have been deposited with the trustee as security for the first refunding bonds of the Brooklyn Rapid Transit Company.

The first refunding gold mortgage was closed by the consolidating and refunding mortgage of the Brooklyn Rapid Transit Company dated June 1, 1918, under which $29,000,000, face value, bonds, were authenticated and delivered, and which were deposited under a note indenture of the Brooklyn Rapid Transit Company dated July 1, 1919, securing an issue of $57,735,000 3-year 7 per cent. gold notes, of which $17,325,000 were held by the War Finance Corporation. This latter consolidated and refunding gold mortgage covers practically all the property of the Brooklyn Rapid Transit Company, subject, however, to the lien of a mortgage referred to, in which the Central Union Trust Company of New York is trustee. While it is said that all the mortgages of the Brooklyn Rapid Transit Company are now in the process of foreclosure, when the Sea Beach bonds were paid, as herein stated, the only pending foreclosure was that brought by the trustee of the consolidated and refunding mortgage.

[1] The Brooklyn Rapid Transit Company reached the stage, on December 31, 1918, where it was unable to meet its obligations, and a receiver was appointed in this action in equity. In the mortgage of October 1, 1895, referred to as its first mortgage, and of which the Equitable Trust Company of New York is the successor trustee, made

in order to make payment for the property and assets of the Long Island Traction Company, including the capital stock of the Brooklyn Heights Railroad Company, it was provided to—

"* * * grant, bargain, sell, assign, transfer and set over and deliver unto the trustee * * * all and singular the property and franchises of said Transit Company, whether now owned or hereafter acquired, including particularly the property hereinafter described, and does hereby pledge and hypothecate the same; that is to say: * * *"

The enumeration of the four classes of property "hereinafter described" are as follows:

"(1) All right, title, and interest which the Transit Company now owns or may hereafter acquire in the stock of Brooklyn Heights Railroad Company.

"(2) All dividends, income, and interest, or increase, to which the Brooklyn Rapid Transit Company now is or may hereafter become entitled by reason of its interest in the stock of the Brooklyn, Queens County & Suburban Railroad Company.

"(3) All net profits in anywise derived or received by the Brooklyn Heights Railroad Company as lessee under that lease.

"(4) All right, title, and interest of the Brooklyn Rapid Transit Company in and to the cost of property, extensions, etc., paid for by the Brooklyn Heights Railroad Company out of its own funds for use of the Brooklyn City Railroad Company, being the Brooklyn City Construction account."

Article 16 of the mortgage provided that, upon payment or other satisfaction of the principal or interest of all the bonds issued under the mortgage—

"* * * the trustee shall, on demand of the Transit Company and at its cost and expense, forthwith surrender, reassign, retransfer, and deliver to the Transit Company, its successors or assigns, all shares of stock and other property which may be then held by the trustee hereunder."

This first mortgage was filed as a chattel mortgage on February 5, 1896, and the filing was renewed each year thereafter until 1902; the last renewal being on January 22, 1902. It was not otherwise recorded. On September 1, 1916, the Brooklyn Rapid Transit Company acquired $650,000, principal amount of bonds of the Sea Beach Railway Company. These bonds remained in the possession of the Brooklyn Rapid Transit Company in its treasury when the receiver was appointed on December 31, 1918. The principal of these bonds has since been paid to the receiver. The Sea Beach bonds were issued September 1, 1896, and matured on September 1, 1916, and were not in existence at the date of the execution of the first mortgage referred to.

The appellant seeks to impress an equitable lien on the proceeds of these bonds, contending that it, as trustee, was entitled to the bonds by virtue of the after-acquired property clause of the first mortgage. It asks to sustain this lien as against the general creditors and the receiver appointed of the Brooklyn Rapid Transit Company. It contends that, upon the receipt of this $650,000, bonds of the Sea Beach Railway Company, by the Brooklyn Rapid Transit Company, that such a lien was created, even though there was no delivery of such bonds to the trustee named in the mortgage. It seeks to follow the proceeds of these bonds by the same reasoning. The matter was referred

to a special master appointed by the court, and his finding disallowing the claim was sustained by the District Judge. From an order entered thereon, the present appeal is prosecuted.

The District Judge concluded that the receiver was entitled to the proceeds of the Sea Beach bonds, and reached this conclusion, feeling constrained to so find, whether the mortgage be construed as a chattel mortgage or as an obligation of pledge. It will be observed, on examination of the mortgage, that, following the after-acquired property clause, the mortgage makes use of the words "that is to say," and then follows a description of the property actually pledged in the phrase above given. We think the use of this language and that of the specifically described property puts a limitation upon the property intended to be pledged under the mortgage. It is descriptive of the property, and indicates the future property intended to be covered by the mortgage. Such a detailed description of the different kinds of property pledged, embraced in the words quoted above, was not intended to mean to embrace every conceivable possession of securities and rights belonging thereto in the Brooklyn Rapid Transit Company. Its specification of the different kinds of property pledged indicates an intention to confine it to such properties as would be held· in the ordinary course of the Brooklyn Rapid Transit Company's business as a holding company. Smith v. McCullough, 104 U. S. 25, 26 L. Ed. 637. From this it cannot be argued that the Sea Beach bonds are of the same general character and within the general scope and purpose of the first mortgage. They are not embraced within the description of the properties specified in paragraphs 1, 2, 3, and 4 following the after-acquired property clause.

[2] One of the purposes for which the first mortgage was executed was to make payment for the Brooklyn Heights stock. An examination of the mortgage will reveal that it was not actually drafted prior to the date of incorporation of the Brooklyn Rapid Transit Company in January, 1896. It is apparent, considering the fact that the Brooklyn Rapid Transit Company was not incorporated until January, 1896, and from the face of the mortgage, that the parties had in mind the acquisition of certain specifically described properties and rights and the execution of the mortgage and the issuance of bonds for the purpose of raising funds to make payment therefor, having in mind transactions to be consummated as nearly contemporaneously as possible. They intended that the bonds would be disposed of prior to the actual acquisition of title to the properties by the Brooklyn Rapid Transit Company, and this accounts for the use of the phrase "whether now owned or hereafter acquired"; the sole purpose apparently being to pledge these specifically described properties immediately upon acquisition and for no other purpose. In order to obtain equitable relief, or to establish an equitable lien, the courts have been strict in demanding that, as a condition of such enforcement, the intention of the parties should be clearly found from the expression of their contractual relation as found in the contract, and it must appear that there is no vagueness or uncertainty as to the terms or substance of the agreement. In re Stiger, 209 Fed. 148, 126 C. C. A. 96.

[3] There is another objection to the granting of the relief sought by the appellant. A receiver has been appointed. He represents the creditors, and performs his duties for the creditors' benefit, with the duty to conserve the assets of the company. Mortgages or contracts of pledge of subsequently acquired personal property will not be enforced as against creditors. This has uniformly been held in both the federal and the courts of the state of New York. The right to insist upon the pledge of "after-acquired property" under a chattel mortgage cannot withstand the attack of a general creditor. The mortgage can have no positive operation to transfer in præsenti property not in esse. In re P. J. Sullivan Co., Inc. (D. C.) 247 Fed. 139, affd. 254 Fed. 660, 166 C. C. A. 158; Zartman v. First Nat. Bank, 189 N Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083; Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635; N. Y. Security Co. v. Saratoga G. & El. L. Co., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132.

The leading case in the state court is Titusville Iron Co. v. City of New York, 207 N. Y. 203, 100 N. E. 806. There a contractor agreed that, in case of his failure to perform certain work provided in the contract, the other party to the contract might give him notice to discontinue the work, and should then have power to complete it and to use such materials as he may find upon the line of work for that purpose. A notice to discontinue was given, and the property taken into possession, after a receiver in bankruptcy was appointed. It was held that the contractor could create no lien other than cognizable at law, either by way of a mortgage, pledge, or otherwise, because the title of the creditor was paramount to that of the party in possession. It was said that the possession must be actual, and not merely constructive, and that the possession taken was not actual but constructive.

In re P. J. Sullivan Co., Inc. (D. C.) 247 Fed. 139, it was held that if possession is not given at the time of the agreement, and the pledge perfected, such possession may be given afterwards; it was held that to perfect a pledge as against creditors or a trustee in bankruptcy, the lien should be made effectual by taking possession prior to the intervention of rights of general creditors. The after-acquired property clause has been similarly treated and construed where it occurs in a chattel mortgage on property. In re Marine Construction & Dry Dock Co., 144 Fed. 649, 75 C. C. A. 451.

[4] If the instrument be considered in the light of a common-law mortgage, it would be a mortgage on chattels. Indeed, it was treated so by the parties, for it was refiled annually. It was not, however, refiled since 1902, and would therefore be void as against creditors in respect to the Sea Beach bonds. An unfiled mortgage is void as against general creditors, and a trustee in bankruptcy appointed on behalf of the creditors may successfully attack the validity of such an unfiled mortgage. In re Gerstman et al., 157 Fed. 549, 85 C. C. A. 211; In re Schmidt, 181 Fed. 73, 104 C. C. A. 107. Therefore, whether the stocks and bonds enumerated in the mortgage be considered as mere choses in action or personal property, tangible and movable, the result will be the same.

[5] Concededly, there was no delivery of the bonds to the trustee. He never had possession, actual or constructive. Delivery and possession are essential to a valid pledge of negotiable paper. If the bonds be treated, as contended for by the appellant, to be nonnegotiable, the assignees of a pledge, to create a property right as against third persons, require possession by the pledgees. Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779; American Can Co. v. Erie Preserving Co., 183 Fed. 97, 105 C. C. A. 388.

For the reasons which we have above assigned we are of the opinion that the first mortgage referred to was not intended to pledge the Sea Beach bonds after acquired by the Brooklyn Rapid Transit Company, and that they were not mortgaged as chattels or pledged, and that the trustee, under the first mortgage, is not entitled to the proceeds of the bonds.

The order is affirmed.