**CONTINENTAL NAT. BANK & TRUST CO.**
et al. v. FULLERTON.

No. 8894.

Circuit Court of Appeals, Eighth Circuit.
March 13, 1931.

Henry Fitts, of Chicago, Ill., and A. F. House, of Little Rock, Ark., for appellants.

Frank H. Sullivan, of St. Louis, Mo., and Walter G. Riddick and Charles T. Coleman, both of Little Rock, Ark., for appellee.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a decree which adjudicated priorities between two mortgages as respects a certain derrick boat.

The facts are largely undisputed, and are substantially as follows: In 1923 the Thane Lumber Company was engaged in the manufacture and sale of lumber in Arkansas City, Ark. It purchased that year and put into use a steel barge costing about $8,500. In March, 1924, the barge was tied up near the mill, where high water and a storm caused it to sink. When the water subsided, in the summer of 1924, the barge became visible, and it was bailed out and caused to float in December of that year. It was then used as a material barge and work barge. It was also used as a crib in connection with an inclined track from the river to the mill. In the summer or fall of 1925, the barge was cut in two; one-half of it was sold for $1,500, and the other half was converted into a derrick boat.

The work of so converting it was done during the period commencing in the fall of 1925 or the winter of 1925–1926 and ending in the summer of 1927. The cost of reconstruction was seventeen or eighteen thousand dollars.

November 1, 1924, the Thane Company executed a mortgage to the Continental National Bank & Trust Company and another, as trustees, to secure a series of bonds amounting to $630,000. The mortgage was recorded January 10, 1925. It covered lands, railroads, mill site, lumber and river equipment, fallen trees, and logs; and, among other property, "also all boats, barges and river equipment of every kind now or hereafter used or acquired for use by the Mortgagor in connection with its operations on the mortgaged property." The mortgage also contained the following clause:

"It will at its own expense do all things the Trustees or Bankers may deem necessary to keep this Instrument a first lien on any and all of the mortgaged property and will promptly and duly execute and deliver to the Trustees any instruments which the Trustees or Bankers deem advisable for better carrying out the true intent hereof. It will not create or attempt or suffer to be created any lien or charge whatsoever on the mortgaged property or on any part thereof prior to or of equal rank with the lien hereof, or whereby the lien or security hereof might be impaired."

February 25, 1926, the Thane Company, as first party, made a contract with S. H. Fullerton, C. W. Reighard, and Bradley Investment Company, as second parties, by which the Thane Company agreed to buy from the second parties certain stock of the Thane Company owned by them. Payment was to be made by promissory notes executed by the Thane Company. It was further agreed that the second parties should have an equitable mortgage on all lumber manufactured by the first party to secure said notes; said mortgage, however, to be subject to a mortgage held by the Chicago Lumber & Coal Company on said lumber as manufactured by said first party.

The Chicago Lumber & Coal Company was the sales company of the Thane Lumber Company. By the contract between them, prior to February 25, 1926, the Chicago Lumber Company agreed to advance $20 per thousand feet on all hardwood and cypress lumber No. 2, common or better, manufactured by the Thane Lumber Company, and take a mortgage thereon.

Subsequent to the making of the contract of February 25, 1926, the Thane Lumber Company agreed with the Bradley Investment Company that the Chicago Lumber & Coal Company should take out of the proceeds coming to the Thane Lumber Company from lumber sold $4 per thousand feet, and pay it to the Bradley Investment Company to be applied on the indebtedness owing by the Thane Lumber Company to the Bradley Investment Company. This arrangement was carried out.

On October 25, 1927, the Thane Company executed a mortgage to the Bradley Investment Company (later assigned to appellee Fullerton), covering real and personal property, including the following:

"Also all boats, barges and river equipment of every kind now or hereafter used or acquired for use by the mortgagor in connection with its operation on the mortgaged property.

"And special mention and reference is made to the * * * Derrick boat 'Chester.'

" * * * All lumber that the grantee may manufacture or have on its yards at its mill plant in Arkansas City which yard is known as Thane Lumber Company Lumber yard, but subject, however, to the advances made by the Chicago Lumber & Coal Company. * * * "

The derrick boat Chester was the reconstructed boat here in controversy.

This mortgage also contained the following clause:

" * * * This mortgage is executed subject to the terms and conditions of the mortgage entered into between the Thane Lumber Company and the Continental & Commercial Trust & Savings Bank, and Calvin Fentress, which mortgage is dated November 1st, 1924, and filed for record in the circuit clerk's office in Desha County."

Default having occurred in the Bradley Investment Company mortgage, suit in equity was commenced to foreclose the same. The Continental National Bank & Trust Company et al., as trustees under the mortgage of November 1, 1924, were made parties. They answered, and by cross-bill set up the mortgage of November 1, 1924, default thereunder, and prayed for appropriate relief.

November 23, 1928, the court entered a decree under the cross-bill, foreclosing the mortgage of November 1, 1924, and ordering a sale of the property covered by said mort-

gage, except the steel derrick boat here in controversy. As to said boat, the court said:

" * * * That a certain steel derrick boat completed in the year 1927 now in possession of Thane Lumber Company be not sold and the priority of right to such boat of the aforenamed counterclaimants be hereinafter determined. * * * "

The sale as to the other property was duly confirmed.

June 29, 1929, the court entered a decree in the Fullerton suit, foreclosing the mortgage of October 25, 1927, and ordering a sale of the property covered by said mortgage. The decree contained the following:

"The question of priority of lien as to the derrick boat 'Chester' as between the plaintiff S. H. Fullerton and the countercomplainant, Continental Bank & Trust Company, having been this day heard and taken under advisement is reserved for further consideration."

The sale as to the other property was duly confirmed.

January 21, 1929, the Continental National Bank & Trust Company et al. filed a petition for a sale of the derrick boat.

February 19, 1930, a decree was entered containing the following:

" * * * The court, after argument of counsel, being well and sufficiently advised, finds that the Continental Bank & Trust Company of Chicago, and Wm. P. Kopf, Trustees, are entitled to a first lien for $1500 on the derrick boat 'Chester', and that S. H. Fullerton is entitled to any balance arising from its sale, said amounts to be credited on the decrees in favor of said parties respectively."

A sale of the derrick boat and distribution of the proceeds were ordered.

The present appeal followed; a severance as to the Thane Lumber Company being duly had.

We think it is clear under the facts above set out that the mortgage of November 1, 1924, to the Continental National Bank & Trust Company by its granting clause covered the steel barge which at one time was sunk but never abandoned; that said clause also covered, as a matter of law, any additions or repairs or alterations in said barge which did not amount to a change of identity.

We think it is also clear, under said facts, that as between the Thane Company and the Continental National Bank & Trust Company, and laying to one side any rights of the Bradley Investment Company, the

mortgage of November 1, 1924, to the Continental National Bank & Trust Company, by reason of the after-acquired property clause, covered all additions and alterations which converted the barge into a derrick boat.

We pass to a consideration of the rights of the Bradley Investment Company in and to said derrick boat. Such rights must have their origin in (1) the contract of February 25, 1926; (2) some promise by the Thane Lumber Company to give to the Bradley Investment Company a lien on the derrick boat; or (3) the mortgage of October 25, 1927, to the Bradley Investment Company.

As to the first (contract of February 25, 1926), it purported to give, not a mortgage or an equitable lien on the barge or on the derrick boat (which, according to counsel for appellee was not thought of until the fall of 1926), but merely an "equitable mortgage against all lumber No. 2, Common and Better manufactured by party of the first part [Thane Lumber Company]" to secure the payment of an indebtedness to the Bradley Investment Company represented by certain notes.

Appellee contends that the money derived from the sale of lumber was not used by the Thane Lumber Company to pay the notes, but, instead, was used in constructing the derrick boat; and hence that the equitable mortgage on the lumber followed the proceeds and attached to the derrick boat.

There are several reasons why this contention cannot prevail: First, there is no sufficient proof that the proceeds of lumber which should have been devoted to the payment of notes to the Bradley Investment Company were diverted to the building of the derrick boat. The evidence shows that there was no default in the payment of such notes until about November 1, 1926, and, meanwhile, a very considerable sum had been spent on the derrick boat. Second, there has been no sufficient tracing of the proceeds of the lumber, on which the Bradley Company had an equitable mortgage, into the derrick boat. The evidence shows that the moneys spent on the boat came from the general funds of the Thane Lumber Company. The evidence does not show that the only source of these general funds was from the sale of lumber covered by the equitable mortgage. The equitable mortgage covered certain specified classes of lumber only. What the sales were of other classes is not shown. Further, it appears affirmatively that the Thane Company received $1,500 from the sale of one-

half of the steel barge; and that it was entitled to 3 per cent. commission on sales of lumber made by it to parties calling at Arkansas City. What the amount of revenue from these sources was does not appear, nor whether there were still other sources. Furthermore, even conceding that some of the proceeds of the lumber covered by the equitable mortgage were diverted from the payment of the notes secured by the mortgage, yet it appears that other expenditures were made by the Thane Lumber Company, during this period, amounting to upwards of $17,-000, in repairing docks and barges and in installing a water system. It is not shown that the diverted funds did not go into these several improvements instead of into the derrick boat; nor is the exact amount of funds claimed to have been diverted shown. The tracing of diverted funds into the derrick boat is, therefore, very far from being made out. But such tracing must be clear before the equitable mortgage would attach to the boat, even if appellee's theory be correct. Pomeroy, Equity Juris. (3d Ed.) vol. 3, § 1058; Empire St. Sur. Co. v. Carroll County, 194 F. 593, 604 (C. C. A. 8); Macy v. Roedenbeck (C. C. A. 8) 227 F. 346, 353, L. R. A. 1916C, 12, and note, page 21; Zenor v. McFarlin, 238 F. 721, 724 (C. C. A. 8), and cases cited; Central State Bank v. McFarlin, 257 F. 535 (C. C. A. 8).

Further, the arrangement above noted, by which the Bradley Investment Company received $4 per thousand feet of lumber, to be applied on the debt of the Thane Lumber Company, was a waiver of any equitable lien on the remaining proceeds.

Finally, if any of the proceeds of the lumber covered by the equitable mortgage went into the derrick boat, it was with the consent of the mortgagee, the Bradley Investment Company. Counsel for appellee says in his brief:

"Probably $5,417.36 of these funds were used before the Bradley Company discovered the diversion. A large part of the balance, $12,056.77, was used after Reighard complained of the diversion, but permitted such diversion to continue, under the assurance that the Bradley Company would have a first lien on the derrick boat, and that a mortgage covering it would be executed as soon as it was completed."

In view of the foregoing circumstances, we think that the lien of the equitable mortgage on the lumber did not attach to the derrick boat.

Another contention of appellee is that the Thane Lumber Company promised that the Bradley Investment Company should have a lien on the derrick boat when completed, and that this promise was carried out by the execution of the mortgage of October 25, 1927. We think the evidence does not sustain the making of such promise; and, unless such promise was made, an equitable lien would not arise, under the circumstances here existing. 37 C. J. p. 315 et seq.; Westinghouse, etc., Co. v. Brooklyn, etc., Co. (C. C. A.) 263 F. 532; In re Interborough Consol. Corp. (C. C. A.) 288 F. 334, 349, 32 A. L. R. 932; Shooters Island Shipyard Co. v. Standard Shipbuilding Corp. (C. C. A.) 293 F. 706; Jackman v. Newbold, 28 F.(2d) 107, 112, 62 A. L. R. 729 (C. C. A. 8).

In July or August, 1927, and before the execution of the mortgage of October 25, 1927, the derrick boat was completed and in use. It had, therefore, come under the mortgage to the Continental National Bank & Trust Company; and the mortgage of October 25, 1927, could attach only as a second mortgage. This was recognized in the mortgage itself, in the clause above quoted.

In view of the foregoing, we think the court erred in not holding that the Continental National Bank & Trust Company had a first lien on the derrick boat to the full amount of the indebtedness secured by its deed of trust.

The decree is reversed, with instructions to enter a decree in favor of appellant in accordance with the views herein expressed.